# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORNELL BROWN, | Case No. 1:09-cv-00573-DLB (PC) |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (Doc. 1) |
| JAWAYNE FAMBROUGH, et al., | |
| Defendants. | |

**I.      Screening Order**

Plaintiff Thornell Brown ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on March 30, 2009. (Doc. 1.) On October 1, 2009, the Court issued an order requiring Plaintiff either to file an amended complaint or notify the Court of his willingness to proceed only on claims found to be cognizable. The Court found that Plaintiff had stated cognizable claims against Defendants Fambrough, Garcia, Copeland, Vasquez, Yates, Amoako, Gonzales, Whitehead, Peacock, and Hays for violation of the Eighth Amendment, but failed to state any other claims. (Doc. 8.) On October 14, 2009, Plaintiff gave notice that he wished to proceed only on claims found to be cognizable by the Court. (Doc. 9.) Pursuant to this notice, the Court issues the following order.

1

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

**II.     Summary of Plaintiff's Complaint**

Plaintiff was formerly imprisoned at Kern Valley State Prison ("KVSP") in Delano, California, where the acts giving rise to this action allegedly occurred. Plaintiff names as defendants: Jawayne Fambrough, correctional officer; Joe Garcia, correctional officer; Jackson Copeland, correctional officer; Felix Vasquez, correctional officer; Jose Gonzales, correctional officer; V. Yates, correctional officer; Stephaine Amoako, correctional officer; K. Carter, licensed vocational nurse; Jerome Peacock, correctional sergeant; C. Hays, correctional sergeant; John Whitehead, correctional lieutenant; Chris Chrones, former Warden at KVSP; Mike Knowles, former Warden at KVSP; and Anthony Hedgpeth, current Warden at KVSP. (Pl.'s Compl. ¶¶ 3-16.) Plaintiff alleges that defendants used unnecessary and excessive force on Plaintiff. Plaintiff further contends this was done because Plaintiff had complained of the strip

search policies.  Plaintiff alleges a failure to protect Plaintiff from physical abuse and psychological harm.  Plaintiff also alleges that the warden adopted a policy or custom of not taking steps to discipline prison employees who engage in excessive force.

      Plaintiff alleges the following.  On May 31, 2006, several correctional officers were assaulted by several Mexican American inmates.  On June 5, 2006, Facility D, where Plaintiff was housed, was placed on lockdown while prison staff investigated.  From May 31, 2006 to August 2006, former acting warden Chrones implemented a strip search policy.  Prisoners were to remove their clothing, wearing only boxers and t-shirt, and allow prison staff to inspect the inmates' body before releasing them to work assignment, visiting room, exercise yard, or escorts.  Plaintiff alleges that the strip search increased potential harm to inmate health and safety.  The inmates had to place their clothing items on the dining hall tables.  Staff did not sanitize or clean the dining hall tables before and after the search.  Chrones and Knowles then implemented a cleaning policy following each search.  On June 28, 2006, Plaintiff filed an inmate grievance.  Plaintiff considered the strip search policy unsanitary, punitive, and immoral.

      On August 23, 2006, Plaintiff was the last inmate to be strip searched in the facility.  Officer Garcia had pulled Plaintiff's boxers down in a way that Plaintiff felt violated and dehumanized him.  Plaintiff stepped a foot or two forward, turned around, and asked Garcia why he did that.  Garcia interpreted this as a threatening act by Plaintiff, and put his hand on his baton holster.  Plaintiff stepped in front of officer Fambrough to have him do the search, but Fambrough refused.  Plaintiff then lay prone on the ground to indicate to the officers that he was not refusing to comply.  Plaintiff was then handcuffed behind his back by Fambrough and escorted by Fambrough and Garcia to the yard.  During the escort, Garcia violently pulled forward on Plaintiff's right arm while Fambrough violently snatched back on Plaintiff's left arm.  Based on the black inmates' reaction to Plaintiff's escort, the observation tower ordered all inmates to lie prone on the ground.  Responding officers Hays, Peacock, Gonzales, and Amoako formed a formation behind the escort.

      After exiting facility D, Fambrough and Garcia used both hands to grab Plaintiff by his arms and attempted to dump Plaintiff on his head.  Plaintiff placed his left foot behind

Fambrough's right foot and leaned back to prevent the two officers from further assaulting. Plaintiff landed on his back, as did officers Garcia and Fambrough. While Plaintiff was on the ground, Plaintiff was then beat, kicked, stepped on, and dragged by officers Fambrough, Garcia, Copeland, and Vasquez. Fambrough stepped on, kicked, and punched Plaintiff in the head and ribs while officers Garcia, Copeland, and Vasquez twisted and bent Plaintiff's arms backward, inflicting more pain. Plaintiff was held in the position for 30 seconds. Hays and Peacock watched but failed to intervene. Peacock then ordered officer Fambrough off, and instructed Gonzales and Yates to lift Plaintiff and escort him to the program office holding cell. Gonzales, Yates, and Amoako all observed the beating but failed to intervene. Whitehead stood at the program entrance door, observing the excessive force, but failed to do intervene.

While in the holding cell, Plaintiff was seen by K. Carter. Carter downplayed Plaintiff's injuries by failing to accurately report them in her medical report, in order to help cover up the excessive force use. Plaintiff sustained many injuries, including bleeding, bruising, and cuts to his face, head, shoulders, elbows, knees, and ankles. Plaintiff also suffered pain in his shoulders and left rib cage, and contusions in the form of shoe marks. Plaintiff was interviewed by Whitehead while being videotaped for the excessive force incident.

Whitehead failed to do a proper investigation because he did not interview the inmates requested by Plaintiff. Plaintiff was examined by K. Carter after the excessive force interview and provided with band-aids and cotton swabs. Plaintiff requested examination by a doctor because he was in a great deal of pain, but K. Carter ignored his request, declaring him to be alright. Plaintiff was then escorted to the administrative segregation unit. Plaintiff's request for medical treatment were ignored. Plaintiff alleges that the large number of inmate complaints against staff put Knowles, Chrones, and Hedpeth on notice that there was a history of abuse at KVSP by prison personnel, but the wardens failed to discipline or train staff.

Plaintiff alleges excessive force, retaliation, failure to intervene, failure to discipline, and inadequate medical care. Plaintiff seeks as relief declaratory judgment, compensatory and punitive damages, and attorney's fees.

//

III.     **Plaintiff's Claims**

        1.     **Eighth Amendment - Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotations and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff has stated a cognizable claim for excessive force against Garcia, Fambrough, Copeland, and Vasquez.

//

//

### 2.     Eighth Amendment - Failure to Intervene

"A prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995). Plaintiff has stated a cognizable claim against Yates, Amoako, Gonzales, Whitehead, Peacock, and Hays for failure to intervene.[1]

### 3.     Eighth Amendment - Medical Care

A prisoner's claim regarding inadequate conditions of confinement does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id. The Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). Here, Plaintiff has not stated a cognizable claim against K. Carter for constitutionally inadequate medical care. Plaintiff has not sufficiently alleged that K. Carter was deliberately indifferent to an excessive risk to Plaintiff's health or safety.

//

//

---

[1] Plaintiff also alleges deliberate indifference to Plaintiff's safety against Fambrough, Garcia, Copeland, Vasquez, Amoako, Gonzales, Yates, Peacock, Hays, and Whitehead. (Pl.'s Compl. ¶ 153.) This claim is subsumed under Plaintiff's excessive force and failure to intervene claims.

6

### 4. Strip Search

Plaintiff alleges that during the strip search, officer Garcia sexually assaulted him in violation of the Eighth and Fourteenth Amendment. (Pl.'s Compl. ¶ 157.)[2] Plaintiff also alleges that the strip search policy implemented and enacted by Chrones, Knowles, Hedgpeth, Garcia, and Fambrough was retaliatory in violation of the First Amendment and punitive in violation of the Eighth Amendment. (Pl.'s Compl. ¶ 165.)

Plaintiff has not stated a cognizable claim for the strip search itself.  While searches intended to harass may violate the Eighth Amendment, see Hudson v. Palmer, 468 U.S. 517, 530 (1984), Plaintiff has not sufficiently alleged that this search was done for the purposes of harassment.  Plaintiff's discomfort is not sufficient to state an Eighth Amendment violation.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Plaintiff has not alleged any facts that would support a claim that he was deprived of a protected interest without procedural due process.

Plaintiff has not stated a cognizable claim that the strip search policy is retaliation in violation of the First Amendment.  Plaintiff appears to allege that the strip search policy was implemented as retaliation against disruptive prisoners for the attack against prison staff.  This is not a retaliation claim.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  Plaintiff clearly does not allege a cognizable retaliation claim because there is no adverse action taken because of any protected conduct.  Formulaic recitation of legal elements is insufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555).

//

---

[2] Plaintiff also alleges a violation of the Gender-Motivated Violence Act, 42 U.S.C. § 13981(c).  This is not a cognizable claim because that section was invalidated in United States v. Morrison, 529 U.S. 598 (2000).

### 5. Supervisory Liability

Plaintiff alleges failure by wardens Chrones, Knowles, and Hedgpeth to take corrective steps or disciplinary actions against prison employees who violate constitutional rights. (Pl.'s Compl. ¶ 184.) Plaintiff is alleging supervisory liability. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Here, Plaintiff has not sufficiently stated a claim against Chrones, Knowles, and Hedgpeth. Plaintiff fails to allege sufficient factual matter that Chrones, Knowles, and Hedgpeth's failure to discipline amounts to deliberate indifference. Mere knowledge is insufficient to state a claim for supervisory liability. See Iqbal, 129 S. Ct. at 1949.

### IV. Conclusion

Plaintiff has stated the following cognizable claims: excessive force in violation of the Eighth Amendment against Garcia, Fambrough, Copeland, and Vasquez; failure to intervene in violation of the Eighth Amendment against Yates, Amoako, Gonzales, Whitehead, Peacock, and Hays. Plaintiff has not stated a cognizable claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment against K. Carter. Plaintiff has not stated a cognizable claim against Chrones, Knowles, and Hedgpeth. Plaintiff fails to state any other cognizable claims. Plaintiff was provided with the option to file an amended complaint, but filed notice that he wished to proceed only on the claims found to be cognizable by this Court.

Based on the foregoing, it is HEREBY ORDERED that:

1. This action proceed against Fambrough, Garcia, Copeland, Vasquez, Yates, Amoako, Gonzales, Whitehead, Peacock, and Hays for violation of the Eighth Amendment; and

2. K. Carter, Chrones, Knowles, and Hedgpeth are dismissed from this action for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated:  **October 20, 2009**                                 **/s/ Dennis L. Beck**
                                                             UNITED STATES MAGISTRATE JUDGE