# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THORNELL BROWN, | CASE NO. 1:09-CV-00573-DLB PC |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | (DOC. 49) |
| JAWAYNE FAMBROUGH, et al., | |
| Defendants. | |

**Order**

## I. Background

Plaintiff Thornell Brown ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding against Defendants Jawayne Fambrough, Jackson Copeland, V. Yates, Stephaine Amoako, Jerome Peacock, and John Whitehead for violation of the Eighth Amendment. Pending before the Court is Defendants' motion for summary judgment, filed April 4, 2011. Defs.' Mot. Summ. J., Doc. 49. Plaintiff filed his opposition on May 16, 2011.[1] Pl.'s Opp'n, Doc. 54. Defendants filed their reply on May 24, 2011. Defs.' Reply, Doc. 55. The matter is submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on November 25, 2009. Second Informational Order, Doc. 13; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

///
///
///
///

### III. Statement Of Facts[2]

On August 23, 2006, Plaintiff was incarcerated in Facility D, Building 3 at Kern Valley State Prison ("KVSP"). Amoako Decl. ¶¶ 2-3; Fambrough Decl. ¶¶ 2-3; Whitehead Decl. Ex. A, 7. Defendant S. Amoako is a correctional officer at KVSP. Amoako Decl. ¶ 1. Defendant J. Copeland is a correctional officer at KVSP. Copeland Decl. ¶ 1. Defendant J. Fambrough is a correctional officer at KVSP. Fambrough Decl. ¶ 1. Defendant J. Peacock is a correctional sergeant at KVSP. Peacock Decl. ¶ 1. Defendant J. Whitehead was a correctional lieutenant at KVSP. Whitehead Decl. ¶ 1. Defendant V. Yates was a sick relief officer at KVSP. Yates Decl. ¶¶ 1-2.

At approximately 9:50 a.m., inmates in Building 3, including Plaintiff, were released to the yard. Amoako Decl. ¶¶ 2-3; Fambrough Decl. ¶¶ 3-4. Plaintiff was arguing with Officer Garcia about the manner in which Garcia was searching him. Amoako Decl. ¶ 3; Fambrough Decl. ¶ 4; Whitehead Decl. Ex A, 19-20. Plaintiff declares that officer Garcia had pulled Plaintiff's boxer shorts up into Plaintiff's buttocks. Pl.'s Opp'n, Pl.'s Decl. ¶ 13. Defendants contend that Plaintiff was visibly upset and irritated. Amoako Decl. ¶ 4; Fambrough Decl. ¶ 4; Whitehead Decl. Ex. A, 19-20. Plaintiff declares that he stepped one or two feet forward away from officer Garcia, turned around, and asked why officer Garcia was searching him in that manner. Pl.'s Decl. ¶ 15. Plaintiff felt he was being dehumanized and violated by officer

---

[2] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(e), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff's opposition includes a statement of disputed facts with citations to supporting documents, as well as exhibits and a declaration.
    Plaintiff's verified complaint may also be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). The Court will consider only those facts and evidence that are relevant to resolving the parties' motion for summary judgment.

Garcia. *Id.* Defendants contend that because of Plaintiff's aggressive demeanor, officer Garcia ordered him to submit to handcuffs, and Plaintiff complied with the order. Defendants contend that Defendant Fambrough and officer Garcia escorted Plaintiff to the facility Program Office due to his disruptive behavior. Defendant Amoako followed the escort. Amoako Decl. ¶ 4; Fambrough Decl. ¶ 5; Whitehead Decl. Ex. A, 19-20.

Plaintiff contends that he attempted to defuse the situation when he saw officer Garcia place his right hand on his baton. Pl.'s Decl. ¶ 17. Plaintiff attests that he expressed his desire to cooperate with the search, and stepped in front of Defendant Fambrough for him to conduct the search. *Id.* Defendant Fambrough declined, at which point Plaintiff contends that he lay prone on the ground for his own safety. *Id.* ¶ 18. While Plaintiff was on the ground, Plaintiff contends that Defendant Fambrough placed his knee on Plaintiff's back while officer Garcia handcuffed Plaintiff from behind. *Id.* ¶ 20. After Plaintiff's left arm was secured by Defendant Fambrough and his right arm was secured by officer Garcia, Plaintiff contends that he was lifted to his feet by both, and forcefully and violently escorted toward the yard entrance gate. *Id.* ¶ 21.

The parties provide differing accounts of the escort.

**A.    Defendants' Version**

Defendants contend the following. During the escort, Plaintiff was highly upset and argumentative. He was verbally abusive and threatening towards Defendant Fambrough, and at least once, he said, "Fuck you. I'll deal with you later," and he threatened to kill Defendant Fambrough and his family. Fambrough Decl. ¶ 6; Whitehead Decl. Ex. A, 19-20. Plaintiff was also resisting by jerking his body side to side and pulling his arm out of Defendant Fambrough's grasp. Fambrough Decl. ¶ 7; Whitehead Decl. Ex. A, 19-20. Defendant Fambrough ordered Plaintiff to calm down and asked him what his (Plaintiff's) problem was. Fambrough Decl. ¶ 8. Plaintiff became more agitated and started shouting in Defendant Fambrough's face, calling him a "mother fucker." Fambrough Decl. ¶ 9.

Inmates, who were already on the yard, were looking at the escorting officers and Plaintiff and started walking in their direction. Fearing that Plaintiff's actions might incite the inmates, the yard was put down and all the inmates were ordered to get down on the ground while the

5

officers completed the escort to the Program Office.  Amoako Decl. ¶¶ 5-8; Fambrough Decl. ¶ 10; Whitehead Decl. Ex. A, 13-14, 22-23.  When the yard was put down, several staff, including Defendants Copeland and Peacock, responded to the area and followed the escort.  Copeland Decl. ¶¶ 3-4; Fambrough Decl. ¶ 11; Peacock Decl. ¶ 3.

      Defendant Fambrough and Garcia continued the escort to the Program Office, and Plaintiff continued his resistive and verbally abusive behavior. He continued to say, "fuck you," despite Defendant Fambrough's repeated orders to calm down and relax, and he continued turning his body side to side and pushing his body or shoulders into Defendant Fambrough and Garcia.  Amoako Decl. ¶¶ 9-10; Fambrough Decl. ¶ 12; Copeland Decl. ¶ 4; Peacock Decl. ¶¶ 4-5.  When the escort reached the patio area, Defendant Amoako entered the gated area first to clear the path. Amoako Decl. ¶ 11. As the escort entered through the gates that led to the Program Office, Plaintiff began to act very aggressively and became resistive by moving his body side to side and pulling away from the escort and pushing into Defendant Fambrough with his left shoulder. Plaintiff was also yelling profanities. He turned towards Defendant Fambrough and repeatedly stated, "Fuck you, Bitch.'  Copeland Decl. ¶¶ 5-6; Whitehead Decl. Ex. A, 19-20, 22-23, 28.  Plaintiff's resistive behavior caused Defendant Fambrough to lose his balance, and he fell backwards and hit his head on the pavement.  Copeland Decl. ¶ 7; Fambrough Decl. ¶ 13; Whitehead Decl. Ex. A, 22-23.

      Plaintiff fell on top of Defendant Fambrough, and Garcia also fell.  Amoako Decl. ¶¶ 12-13; Fambrough Decl. ¶ 13; Peacock Decl. ¶¶ 6-7; Whitehead Decl. Ex. A, 19-20.  Defendant Yates responded to the alarm in the patio area. Yates Decl. ¶ 3.  On the ground, Plaintiff continued to resist, and he was kicking his legs and cursing. Amoako Decl. ¶ 13; Copeland Decl. ¶ 8; Fambrough 14; Peacock Decl. ¶ 8; Yates ¶ 4; Whitehead Decl. Ex. A, 19-20, 28.  Defendant Copeland blocked Plaintiff's kick and injured a finger on his left hand. Copeland Decl. ¶ 8. Plaintiff ignored repeated orders to stop resisting and continued resisting, moving his body side to side, and kicking his legs.  Amoako Decl. ¶ 15; Copeland Decl. ¶ 11; Yates Decl. ¶¶ 5-6; Whitehead Decl. Ex. A, 19-20, 28.  Defendant Copeland and responding staff eventually gained control of Plaintiff, placed him in leg restraints, and took him into the Program Office.  Amoako

6

Decl. ¶ 16; Copeland Decl. ¶¶ 10; Fambrough Decl. ¶ 15; Peacock Decl. ¶ 9; Yates Decl. ¶¶ 8-9; Whitehead Decl. Ex. A, 19-20. Medical staff responded and evaluated Plaintiff, Defendants Copeland and Fambrough, officer Garcia, and other staff injured during the incident. Copeland Decl. ¶ 12; Fambrough Decl. ¶ 16; Peacock Decl. ¶ 10; Whitehead Decl. Ex. A, 19-20, 26-28, 30-34.

### B. Plaintiff's Version

Based on the violent way Defendant Fambrough and officer Garcia escorted Plaintiff, the black inmates became upset, which led to the yard being put down by staff, and all inmates were ordered to the ground. Pl.'s Decl. ¶ 23. Plaintiff did not resist or threaten Defendant Fambrough in any way, instead hoping that the escorting officers would stop hurting Plaintiff. *Id.* ¶ 24. Defendants Peacock, Copeland, and officer Gonzales responded to the area and formed an umbrella formation behind the escort. *Id.* ¶ 25.

Before exiting the Facility D yard onto the patio area, officer Garcia secured Plaintiff's upper right arm with both his hands, while Defendant Fambrough secured Plaintiff's left arm with both of his hands. *Id.* ¶ 26. They attempted to dump Plaintiff on his head. *Id.* Plaintiff placed his left foot behind Defendant Fambrough's right foot, and leaned back to prevent Defendant Fambrough and officer Garcia from slamming Plaintiff into the ground. *Id.* ¶ 27. Plaintiff landed on his back, and Defendant Fambrough and officer Garcia fell backwards. *Id.* They then recovered from the fall and turned Plaintiff violently on his stomach. *Id.*

While Plaintiff was on his back and on the ground in a helpless position, handcuffed, Defendants Fambrough, Copeland, and officers Garcia and Vasquez beat, kicked, stepped on, and dragged Plaintiff by his t-shirt and boxer shorts a foot or two. *Id.* ¶ 28. Plaintiff was turned onto his stomach, and Defendant Fambrough continued stepping, kicking, and punching Plaintiff in the head and ribs, while Defendant Copeland, and officers Garcia and Vasquez pulled, twisted, and bent Plaintiff's arms in awkward positions to maximize the pain Plaintiff was enduring. *Id.* ¶ 29. Plaintiff was in this position for about 30 seconds. *Id.* ¶ 30. Defendant Peacock stated that he did not see any use of force, and suggested to staff members how they were going to cover up this incident. *Id.*

1  Defendant Peacock, Amoako, Yates, and officer Gonzales were present and observed the
2  beating, but did not intervene to stop until Defendants Fambrough and Copeland, and officers
3  Garcia and Vasquez exerted all their energy. *Id.* ¶ 31.  After Plaintiff was beaten, he was lifted to
4  his feet and escorted to the holding cell in the program office with his hands high in air. *Id.* ¶ 32.
5  Plaintiff was secured in the holding cell under tremendous pain, and remained in handcuffs for
6  about three hours. *Id.* ¶ 33.  Nurse Carter documented Plaintiff's injuries and downplayed the
7  extent with an inaccurate medical report. *Id.*

8  Defendant Whitehead was standing in the program entrance doorway while Plaintiff was
9  being brutally beaten on the patio area. *Id.* ¶ 35.  Defendant Whitehead observed these actions
10 taking place and did not supervise or stop the force used against Plaintiff. *Id.*

**C.   After Incident**

At approximately 12:50 p.m., Defendant Whitehead conducted a use-of-force interview
of Plaintiff. Defendant Peacock, who operated the video camera, documented Plaintiff's injuries,
which Defendants contend consisted of several scrapes, scratches, and abrasions to the left side
of his head and left knee, shoulder, and ankle, and minor scrapes to his right knee. Peacock Decl.
¶¶ 11-12; Whitehead Decl. ¶ 2, Ex. A, 4-5, 30.  Plaintiff contends that he suffered bleeding,
bruises, and cuts to his face, head, shoulders, elbows, knees, and ankles. Pl.'s Decl. ¶ 37.
Plaintiff contends that he sustained unbearable pain in his shoulders and left rib cage area, and an
open wound to his left shoulder and facial area. *Id.*  Plaintiff contends that contusions with the
markins of shoe prints were on his back and facial area. *Id.*

Defendant Fambrough sustained a concussion as a result of the incident, and he was taken
by ambulance to a community hospital for further treatment. Fambrough Decl. ¶¶ 16-17.
Defendants Fambrough and Copeland contend that they did not punch, kick, or strike Plaintiff.
They contend that they used only the amount of force necessary to maintain and gain control of
Plaintiff, and they did not use force on Plaintiff for any purpose other than to get him to comply
with their orders to stop resisting and to prevent injury to themselves and staff. Copeland Decl.
¶¶ 13-16; Fambrough Decl. ¶¶ 18-20.

Defendants Amoako, Peacock, and Yates contend that they did not hit or strike Plaintiff, and they did not see any officer involved in the incident use any more force than was necessary and reasonable to restrain and gain control of Plaintiff and to stop or prevent injury to staff. Amoako Decl. ¶ 17; Peacock Decl. ¶¶ 13-14; Yates Decl. ¶¶ 10-11. Defendant Whitehead contends that he was not present when the incident occurred and did not see any purported excessive force used on Plaintiff. Whitehead Decl. ¶¶ 4-8.

### III.  Analysis

Defendants concede that there remains a genuine dispute of material fact as to Plaintiff's Eighth Amendment claims against Defendants Fambrough, Copeland, Amoako, and Peacock. Defs.' Reply 1:20-27. Defendants contend, however, that Plaintiff fails to dispute Defendants Whitehead and Yates's contention that they did not witness the alleged incident in question. *Id.* at 1:27-2:19. In the alternative, Defendants contend that they are entitled to qualified immunity. Defs.' Mem. P. & A. Support Mot. Summ. J. 9:10-11:2.

#### A.  Failure To Intervene

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837. Thus, a prison official may be held liable under the Eighth Amendment for

denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Id.* at 835; *Frost*, 152 F.3d at 1128. A prison official can violate a prisoner's Eighth Amendment rights by failing to intervene when an Eighth Amendment violation occurs. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). However, defendants are liable for failure to intercede if they had an opportunity to intercede. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (in context of police officers).

Defendant Yates contends that Plaintiff's declaration that Defendant Yates was present and observed the beating is conclusory. Defs.' Reply 2:3-10. Defendant contends that Plaintiff's declaration raises no factual dispute about when Defendant Yates arrived on the scene and what he saw. *Id.* at 2:16-18. Plaintiff attests that Defendant Yates observed the beating and did nothing to prevent it. Plaintiff may testify as to personal knowledge to which he is competent to testify. Fed. R. Civ. P. 56(c)(4). Plaintiff would have personal knowledge as to who was present and witnessing the alleged beating that was occurring.

Plaintiff's declaration that Defendant Yates observed the incident and failed to intervene is supported in part by Defendant Yates's declaration. Defendant Yates declares that he responded to an alarm and witnessed officer Garcia and Defendants Fambrough and Copeland involved with Plaintiff on the ground. Yates Decl. ¶¶ 3-7. Defendant Yates attests that Plaintiff eventually "stopped resisting" at which point, Defendant Yates escorted Plaintiff to the program office. *Id.* Defendant Yates arrived in time to witness other officers engaged with Plaintiff on the ground. Thus, Defendant Yates would have had the opportunity to observe the alleged use of excessive force against Plaintiff, and failed to act. Construing the facts in the light most favorable to the nonmoving party, Plaintiff raises a triable issue of material fact as to his Eighth Amendment claim against Defendant Yates.

///

Defendant Whitehead contends that Plaintiff's declaration that Defendant Whitehead stood at the program office's entrance door and witnessed Plaintiff being beaten is conclusory. Defs.' Reply 2:7-8, 11-13. Defendant Whitehead contends that Plaintiff fails to assert facts that show where the program door was located in relation to the area where the alleged beating took place, and fails to assert facts that demonstrate at what point Defendant Whitehead saw the incident. *Id.* The Court disagrees. Plaintiff attests that Defendant Whitehead observed the alleged beating from the program office's entrance door and did nothing to prevent it. Plaintiff would have personal knowledge as to who was present and witnessing the alleged beating that was occurring. Construing the facts in the light most favorable to the nonmoving party, Plaintiff raises a triable issue of material fact as to his Eighth Amendment claim against Defendant Whitehead.

### B. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 813 (2009) ("*Saucier* procedure should not be regarded as an inflexible requirement").

The other inquiry is whether the right was clearly established. *Saucier*, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Based on the evidence presented, taken in the light most favorable to Plaintiff, Defendants Yates and Whitehead are not entitled to qualified immunity. A prison official can violate a prisoner's Eighth Amendment rights by failing to intervene when an Eighth Amendment violation occurs. *Robins*, 60 F.3d at 1442. The evidence presented, when construed in Plaintiff's favor, indicates that Defendants Yates and Whitehead witnessed the beating taking place and did not intervene to stop it.

## IV. Conclusion And Order

Based on the foregoing, it is HEREBY ORDERED that Defendants' motion for summary judgment, filed April 4, 2011, is denied.

IT IS SO ORDERED.

Dated:   **November 7, 2011**             /s/ **Dennis L. Beck**
                                           UNITED STATES MAGISTRATE JUDGE